UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHNNIE LEE DIRDEN,
  Plaintiff,

vs.            Case No.: 3:23cv4689/RH/ZCB

BENJAMIN WADE GENTRY, et al.,
  Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights case filed under 42 U.S.C. § 1983. Plaintiff Johnnie Lee Dirden has brought a variety of claims against the following Defendants: (1) Ofc. Benjamin Wade Gentry; (2) Unknown officers of the Pensacola Police Department; (3) the City of Pensacola; (4) Judge Charles Young; (5) Jolie Warrick (Judge Young's assistant); (6) Escambia County; (7) Assistant State Attorney Elizabeth Tillman; and (8) the State of Florida. (Doc. 37 at 1-2). Defendants City of Pensacola, Escambia County, Judge Charles Young, and Jolie Warrick have filed motions to dismiss.[1] (Docs. 30, 31, 32). Plaintiff has responded in

---

[1] Currently, these Defendants are the only ones who have been served and entered an appearance in this matter. They moved to dismiss the first amended complaint, which has since been replaced by the second amended complaint. (Doc. 58). Because the second amended complaint's

1

opposition to the motions to dismiss. (Docs. 46, 52, 53). For the reasons below, the motions to dismiss should be granted.

## I.   Background

What follows is the Court's good faith effort to summarize the events set forth in Plaintiff's second amended complaint.[2] The genesis for this lawsuit was a traffic stop that led to state criminal charges in

---

allegations against Defendants City of Pensacola, Escambia County, Judge Young, and Warrick are substantively the same as those made in the first amended complaint (and suffer from the same defects), the Court will construe Defendants' motions to dismiss the first amended complaint as motions to dismiss the second amended complaint. *See LeFevre v. L. Partners, Ltd.*, No. 1:04cv3819, 2005 WL 8155150, at *1 (N.D. Ga. Apr. 5, 2005) (stating that "[b]ecause the substantive allegations of plaintiff's amended complaint remain unchanged, the court will treat [the defendant's] motion to dismiss as a motion to dismiss the amended complaint"); *see also Gandy v. VT Mae*, No. 18-00381, 2019 WL 4047614, at *1 n.1 (S.D. Ala. Aug. 7, 2019) (treating a motion to dismiss the original complaint "as directed to the amended complaint because the same defects in Plaintiff's original complaint reappear in the amended complaint"). By doing this, the Court promotes judicial efficiency and avoids Defendants devoting additional resources to re-filing motions to dismiss that contain the same arguments as the current motions. *See Switzer v. Franklin Inv. Corp.*, No. 1:22-CV-00201, 2023 WL 1072987, at *2 (W.D. Pa. Jan. 8, 2023) (treating a motion to dismiss the original complaint as a motion to dismiss the amended complaint because the same arguments applied and "[t]his approach serves the interests of judicial efficiency").

[2]At the motion to dismiss stage, the Court assumes the factual "allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Escambia County Circuit Court. According to Plaintiff, he was pulled over by Pensacola Police Ofc. Benjamin Wade Gentry on September 21, 2019. (Doc. 37 at 7). Ofc. Gentry informed Plaintiff that he was stopped for not having a young child in a seat belt. (*Id*. at 8). Plaintiff alleges that his child was wearing a seat belt, and he claims Ofc. Gentry made up the seat belt violation as basis for stopping the car. (*Id*.). Plaintiff says he was actually stopped because of racial profiling. (*Id*. at 1). During the traffic stop, Ofc. Gentry discovered Plaintiff had a suspended driver's license. (*Id*.). Ofc. Gentry arrested Plaintiff for the suspended driver's license offense. (*Id*.). At some point, a police K-9 arrived at the scene and apparently alerted to the car. (*Id*. at 8). Although Plaintiff refused to give consent, Ofc. Gentry and other officers searched his car. (*Id*.). They found nothing. (*Id*.).

Following his arrest, Plaintiff was transported to the Escambia County Jail. (*Id*. at 9). Plaintiff was initially charged with felony driving on a suspended license, but the charge was later reduced to a misdemeanor. (*Id*. at 12). The judge who presided over the case was Defendant Judge Young. (*Id*. at 9, 13). According to Plaintiff, Defendant Judge Young refused to rule on a motion to suppress and motion to

3

correct illegal sentence that Plaintiff filed. (*Id.* at 4, 5, 13). Plaintiff ultimately "accepted a plea," was released from custody, and received a fine of $319.00. (*Id.* at 2). The prosecutor who handled Plaintiff's case was Defendant Elizabeth Tillman. (*Id.* at 12). During the pendency of the state criminal prosecution, Plaintiff spent 42 days in the Escambia County Jail.³ (*Id.* at 9).

Plaintiff later mailed Defendant Judge Young a "Notice to Respondent and Notice of Intent to Sue," as well as a "Motion to Correct Illegal Sentence." (*Id.* at 14). Defendant Warrick (Defendant Judge Young's assistant) mailed the documents back to Plaintiff with an instruction that he needed to file them with the Clerk of Court. (*Id.*). According to Plaintiff, that action by Defendant Warrick denied him "access to the court" and violated due process. (*Id.* at 5, 14).

Plaintiff alleges that Defendants violated numerous laws. Those include provisions of the U.S. Constitution (i.e., the First, Fourth, and Fourteenth Amendments), regulations found in the Code of Federal Regulations (i.e., 25 C.F.R. § 11.404), various federal criminal statutes

---

³ It appears that Plaintiff initially paid a bond, but his bond was later revoked. (*See id.* at 1, 13).

4

(i.e., 18 U.S.C. §§ 241, 242, and 371), and some Florida state laws (i.e., § 2 of the Florida Constitution and Fla. Stat. § 768.72). In terms of relief, Plaintiff seeks money damages, the firing of several Defendants, and the reversal of his state court conviction in Case Number 2019CT0003583.

## II.   Discussion

### A.   The motion to dismiss standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal if a complaint fails to state a claim on which relief can be granted. When evaluating a Rule 12(b)(6) motion to dismiss, a court must accept the complaint's allegations as true and construe the facts in the light most favorable to the plaintiff. *Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). To survive dismissal, "[a] plaintiff must plausibly allege all the elements of the claim for relief. Conclusory allegations and legal conclusions are not sufficient; the plaintiff[] must state a claim to relief that is plausible on its face." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The pleadings of *pro se* litigants are to be liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). "Despite the leniency afforded *pro se* plaintiffs, the district court does not have license to rewrite a deficient pleading." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008).

**B.   Plaintiff has failed to plausibly allege that his injuries were caused by a policy or custom of Defendants Escambia County or City of Pensacola.**

Defendants Escambia County and City of Pensacola argue that dismissal is warranted, *inter alia*, because Plaintiff has failed to plausibly allege the requirements for municipal liability under § 1983. (Doc. 30 at 8-9; Doc. 31 at 6-7). The Court agrees.[4]

A plaintiff suing a municipality, such as Escambia County or the City of Pensacola, under § 1983 must allege that (1) "his constitutional rights were violated"; (2) the municipality "had a custom or policy that

---

[4] Because the Court finds that Plaintiff has failed to plausibly allege *Monell* liability claims against Defendants City of Pensacola and Escambia County, and that finding disposes of the claims against these Defendants, it is unnecessary to address the other arguments they have made in their motions to dismiss.

6

constituted deliberate indifference to that constitutional right; and (3) . . . the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). This doctrine is known as "*Monell* liability," after the Supreme Court case that first announced it. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The *Monell* liability doctrine "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original). Under the *Monell* liability doctrine, "a municipality cannot be held liable *solely* because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Collins v. City of Harker Heights,* 503 U.S. 115, 121 (1992) (cleaned up).

Here, Plaintiff's second amended complaint fails to plausibly allege that his injuries were caused by a policy or custom of Defendants Escambia County and the City of Pensacola. Plaintiff has not identified a policy by these municipal Defendants that led to the complained-of incident, nor has he sufficiently alleged that these municipal Defendants

had a custom of permitting the allegedly unconstitutional actions discussed in Plaintiff's amended complaint. The second amended complaint addresses Plaintiff's isolated experience with employees of the municipal Defendants. But identifying a single incident of conduct by municipal employees is insufficient to satisfy the *Monell* doctrine. *See Floyd v. City of Miami Beach*, 730 F. App'x 838, 842 (11th Cir. 2018) (holding that a *pro se* plaintiff had not plausibly alleged a Fourth Amendment claim against a city because the plaintiff's "own experience" of a single incident with a city officer was insufficient to satisfy *Monell* liability); *see also McDowell*, 392 F.3d at 1290-91 (finding that the plaintiff's "isolated" experience "however unfortunate, does not demonstrate evidence of the County's persistent or widespread policy") (cleaned up). Because Plaintiff has failed to plausibly allege a *Monell* liability claim under § 1983, the motions to dismiss filed by Defendants Escambia County and City of Pensacola should be granted.

### C. Plaintiff's claims against Defendant Judge Young and his judicial assistant Defendant Warrick are barred by judicial immunity.

Defendants Judge Young and Warrick have moved to dismiss the claims against them on the basis of judicial immunity. (Doc. 32 at 8-9).

8

The Court agrees that Defendants Young and Warrick are entitled to judicial immunity.[5]

Judges are absolutely immune from lawsuits for money damages involving actions taken in their judicial capacity, unless they acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Judicial immunity also bars injunctive relief for acts taken in a judicial capacity, except in limited circumstances when "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *Daker v. Keaton*, No. 20-10798, 2021 WL 3556921, at *2 (11th Cir. Aug. 12, 2021). To determine if a judge was acting in a judicial capacity for immunity purposes, courts consider "(1) whether the act is one normally performed by judges, and (2) whether the complaining party was dealing with the judge in his judicial capacity." *Stevens v. Osuna*, 877 F.3d 1293, 1304 (11th Cir. 2017) (citation omitted). Judges are entitled to immunity "even when the judge's acts are in error." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Staff members of a judge

---

[5] Because the Court finds that Defendants Judge Young and Warrick are entitled to judicial immunity and that finding disposes of the claims against them, it is unnecessary to address the other arguments they have made in their motions to dismiss.

"are encompassed by a judge's absolute immunity when their official duties have an 'integral relationship with the judicial process.'" *Jarallah v. Simmons*, 191 F. App'x 918, 920 (11th Cir. 2006) (quoting *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994)).

    Here, Plaintiff's allegations against Defendant Judge Young involve things he supposedly did or did not do while presiding over Plaintiff's criminal case in Escambia County Circuit Court. The things Plaintiff references in his second amended complaint were actions normally taken by judges (i.e., making bond decisions, holding plea hearings, and considering motions). *See, e.g.*, *Phillips v. Levett*, No. 1:21-cv-00507, 2022 WL 912686, at *4 (N.D. Ga. Mar. 29, 2022) (determining that a decision to not hold a hearing was made in the judge's judicial capacity and therefore covered by judicial immunity); *Medrano v. Sunny Isles Beach Police Dep't*, No. 06-22082, 2007 WL 9703577, at *2 (S.D. Fla. Jan. 16, 2007) (holding a judge was entitled to immunity for a decision to revoke bond because such a decision was an action taken in a judicial capacity). Furthermore, there is no basis for concluding that Defendant Judge Young was acting in the "clear absence of all jurisdiction" in Plaintiff's case. *Stump*, 435 U.S. at 356-57. Because Defendant Judge

Young was acting in his judicial capacity when he took the challenged actions, and the actions were of the type normally done by judges, judicial immunity bars Plaintiff's claims against Defendant Judge Young.

Similarly, Plaintiff's claims against Defendant Warrick (Defendant Judge Young's assistant), are barred by judicial immunity. Plaintiff's allegations against Defendant Warrick involve her returning to Plaintiff certain documents he sent to Defendant Judge Young and informing Plaintiff that such documents should be filed with the Clerk of Court. When Defendant Warrick engaged in that conduct, she was acting within the scope of her position as Defendant Judge Young's assistant—i.e., she was assisting Defendant Judge Young in the carrying out of his judicial duties by informing a litigant of the procedure for filing a motion. Accordingly, Defendant Warrick is entitled to judicial immunity. *See Jarallah*, 191 F. App'x at 921 n.2 (finding that a judge's staff attorney was entitled to judicial immunity for actions taken on behalf of the judge); *see also Shelters v. First Judicial Circuit Court*, 3:20cv5261, 2020 WL 4721836, at *3 (N.D. Fla. June 23, 2020) (finding that a court clerk was entitled to judicial immunity for actions taken as part of job working for the judiciary). Because Defendant Judge Young and Defendant Warrick

11

are immune from liability for the conduct alleged in Plaintiff's second amended complaint, their motion to dismiss should be granted.

### III. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1. The motions to dismiss (Docs. 30, 31, 32) be **GRANTED**, and Plaintiff's claims against Defendants City of Pensacola, Escambia County, Judge Charles Young, and Jolie Warrick be **DISMISSED with prejudice** under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

2. This matter be returned to the undersigned for further proceedings as to the remaining Defendants.

At Pensacola, Florida this 19th day of January 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to the proposed findings and recommendations set forth above must be filed within fourteen days of the date of this Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation

waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.