UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHNNIE LEE DIRDEN,
      Plaintiff,

vs.                        Case No.: 3:23cv4689/RH/ZCB

BENJAMIN WADE GENTRY, et al.,
      Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This is a *pro se* civil rights case filed under 42 U.S.C. § 1983. Currently before the Court are motions to dismiss filed by Defendants Gentry, Hubley, and Kelly. (Docs. 65, 66). Plaintiff has not filed an opposition to the motions.[1] On May 30, 2024, the undersigned heard oral arguments on Defendants' motions. Plaintiff attended the hearing and

_____

[1] Because Plaintiff failed to respond in opposition, the Local Rules would permit the Court to grant the motions by default. *See* N.D. Fla. Loc. R. 7.1(E) ("A party who opposes the motion must file a memorandum in opposition."); *see also* N.D. Fla. Loc. R. 7.1(H) ("The Court may grant a motion by default if an opposing party does not file a memorandum as required by this rule."). Nevertheless, the Court will consider the motions on the merits because of Plaintiff's *pro se* status. *See Pierce v. City of Miami*, 176 F. App'x 12, 14-15 (11th Cir. 2006) (reversing decision to grant summary judgment based on the *pro se* plaintiff's failure to file a response in opposition).

orally expressed his opposition to the motions.  For the reasons below, the motions to dismiss should be granted in part and denied in part.

## I.    Factual Allegations

The events underlying this lawsuit began on September 21, 2019, when Plaintiff was pulled over by a Pensacola police officer.  That officer, Defendant Gentry, told Plaintiff that he stopped him because a young child in the car was not wearing a seatbelt.  Plaintiff claims that the child was wearing a seatbelt and that Defendant Gentry could not have seen otherwise from his vantage point.

During the stop, Defendant Gentry discovered that Plaintiff had a suspended driver's license.  Defendant Gentry then arrested Plaintiff for that offense.  Next, Defendant Gentry asked for Plaintiff's consent to search the car.  Plaintiff refused.  A short time later, a police K-9 arrived and walked around Plaintiff's car.  Defendants Gentry, Hubley, and Kelly proceeded to search Plaintiff's car.  They found no contraband.

Plaintiff was subsequently transported to the Escambia County Jail.  He was initially charged with felony driving on a suspended license, but the charge was later reduced to a misdemeanor.  Plaintiff pleaded no contest to the misdemeanor and received a fine of $319.00.  During the

pendency of the state criminal prosecution, Plaintiff spent 42 days in the Escambia County Jail.[2]

## II.    Procedural Background

Several years after his arrest, Plaintiff filed this lawsuit. (Doc. 1). He subsequently amended his complaint twice, and the second amended complaint (Doc. 37) is the operative pleading. (*See* Doc. 58). Plaintiff has named numerous individuals and entities as Defendants.[3] (Doc. 37 at 5-6). As relevant here, Plaintiff has sued the police officers involved in the incident. They are Defendants Gentry, Hubley, and Kelly.[4] Plaintiff claims Defendant Gentry is liable for malicious prosecution, as well as for unlawfully stopping him, arresting him, and searching his car in

---

[2] It appears Plaintiff was initially released on bond but was subsequently incarcerated after his bond was revoked.

[3] The Court has already dismissed the claims against Defendants City of Pensacola, Escambia County, Judge Charles Young, and Jolie Warrick. (Doc. 63). Defendants State of Florida and Assistant State Attorney Elizabeth Tillman have not entered appearances. Plaintiff has recently filed a notice of default with respect to the State of Florida. (Doc. 77). The Court will address that issue in a separate opinion.

[4] Plaintiff's second amended complaint lists Officer Gentry by name and identifies the two other officers as "Unit PPD #153 and "Sergeant name and badge numbers are unknown." (Doc. 37 at 6). Plaintiff subsequently learned the identities of those two officers and informed the Court that they are "Patrick Kelly, Sergeant and Eric Hubley, Lieutenant." (*See* Doc. 54).

violation of the Fourth Amendment.  (*Id.* at 8-9, 14).  Plaintiff also alleges that Defendants Hubley and Kelly violated the Fourth Amendment by unlawfully searching his car.  (*Id.* at 8-9).  In terms of relief, Plaintiff seeks monetary damages, disciplinary action against Defendants Gentry, Hubley, and Kelly, reversal of his state court conviction, and "any other relief[] the Court deems appropriate."  (*Id.* at 11, 16).

## III.  Discussion

Defendants Gentry, Hubley, and Kelly have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Under that rule, a complaint should be dismissed if it fails to state a claim on which relief can be granted.  When evaluating a Rule 12(b)(6) motion to dismiss, a court must accept the complaint's allegations as true and construe the facts in the light most favorable to the plaintiff.  *Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).  To survive dismissal, "[a] plaintiff must plausibly allege all the elements of the claim for relief." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  The pleadings of *pro se* litigants are to be liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## A.    The amended complaint is not an impermissible shotgun pleading.

Defendants first argue that the second amended complaint is an impermissible shotgun pleading.  The Court disagrees.  A shotgun pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Here, the second amended complaint is "not [a] model[] of efficiency or specificity." *See Charles v. Geo Group, Inc.*, No. 22-13891, 2024 WL 1619911, at *3 (11th Cir. Apr. 15, 2024).  But it is sufficient to place "the defendants on notice of the specific claims against them and the factual allegations that support those claims." *See id.* (reversing dismissal of complaint as a shotgun pleading).  Indeed, after making the shotgun pleading argument, Defendants' motion discusses the claims against them and argues that those claims have not been plausibly alleged.  (*See* Doc. 66 at 5-12; Doc. 65 at 8-12).  And the Court previously ascertained and addressed the claims made against other Defendants in this matter. (*See* Doc. 61).  Because the second amended complaint is sufficient to

provide Defendants with notice of the claims against them and the factual basis for those claims, it is not a shotgun pleading.

## B. Plaintiff has failed to state a malicious prosecution claim against Defendant Gentry.

The Court will next consider Defendant Gentry's argument that Plaintiff has failed to state a plausible malicious prosecution claim. "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Under Florida law, the elements of malicious prosecution are:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant[s] w[ere] the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant[s]; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Id.* (citing *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002)).

Defendant Gentry argues that dismissal is warranted because Plaintiff has not plausibly alleged the third element—i.e., that the

resolution of the state court proceeding constituted a bona fide termination in his favor.  The Court agrees with Defendant Gentry.

Plaintiff has asserted that the state court prosecution terminated when he pled no contest to a misdemeanor charge of driving with a suspended license.  (*See* Doc. 37 at 9).  Although Plaintiff was originally charged with a felony and pled no contest[5] to a misdemeanor as part of a plea bargain, that does not constitute a termination in his favor.  *See Hoffman v. Office of State Att'y*, 793 F. App'x 945, 955 (11th Cir. 2019) ("Because the proceeding against [the plaintiff] ended due to bargaining that resulted in a guilty plea to a lesser-included offense, she cannot establish the element of 'bona fide termination' in her favor."); *see also St. Germain v. Isenhower*, 98 F. Supp. 2d 1366, 1371-72 (S.D. Fla. 2000) (dismissing malicious prosecution claim because the plaintiff's "convictions on the lesser-included offenses . . . do not constitute a

---

[5] Florida "treats a no-contest plea as having the same effect as a conviction." *Stepanovich v. Bradshaw*, No. 2:14-270, 2017 WL 10398672, at *1 (M.D. Fla. Jan 18, 2017) (citing Fla. Stat. § 960.291(3)).  Thus, state judicial proceedings that concluded with a no-contest plea "were not terminated in favor" of a malicious prosecution plaintiff.  *Id.*; *see also Williams v. Pena*, No. 1:21-cv-161, 2021 WL 6197960, at *2 (N.D. Fla. Oct. 28, 2021) ("A no-contest plea and resulting conviction is patently not a favorable resolution, and therefore Plaintiff cannot state a claim for malicious prosecution.").

favorable termination"). Because Plaintiff has failed to plausibly allege an essential element of a malicious prosecution claim, Defendant Gentry's motion to dismiss that claim should be granted.

## C.  Plaintiff has stated a plausible Fourth Amendment unlawful seizure claim against Defendant Gentry.

Defendant Gentry has also moved to dismiss Plaintiff's claim that the traffic stop was an unlawful seizure in violation of the Fourth Amendment. That argument lacks merit because when Plaintiff's allegations are accepted as true and liberally construed, he has stated a plausible Fourth Amendment unlawful seizure claim.

The Fourth Amendment protects against unreasonable seizures by the police. *Cal. v. Hodari D.*, 499 U.S. 621, 624 (1991). A traffic stop is a Fourth Amendment seizure, albeit a limited one. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). "Because a routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest." *Id.* As such, an officer must possess reasonable suspicion to conduct a traffic stop. *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (en banc). This means that "an officer making a stop must have a particularized and objective

8

basis for suspecting the person stopped of criminal activity." *Id.* (cleaned up).

In this case, Plaintiff claims Defendant Gentry unlawfully conducted the traffic stop.[6] Defendant Gentry stated he stopped Plaintiff because a young child was not wearing a seatbelt. Plaintiff alleges, however, that the child was wearing a seatbelt. (Doc. 37 at 8). Plaintiff further alleges that from his vantage point, Defendant Gentry could not have seen whether the child was wearing a seatbelt. (*Id.*). According to Plaintiff, Defendant Gentry falsely stated the child was not wearing a seatbelt in order to justify the stop—a stop Plaintiff says was actually motivated by profiling.[7] (*Id.*).

At the motion to dismiss stage, the Court is required to accept Plaintiff's allegations as true, construe them liberally, and draw all reasonable inferences in his favor. When that is done here, the Court accepts as true that the young child was wearing a seatbelt and that

---

[6] Plaintiff's complaint says Defendant Gentry lacked "probable cause" to conduct the stop. (Doc. 37 at 15). But, as explained above, the standard for a routine traffic stop is reasonable suspicion and not probable cause. Thus, the Court will apply the reasonable suspicion standard.

[7] Although Defendant Gentry stated that the basis for the stop was the seatbelt violation, Plaintiff was never charged with that offense. Rather, he was charged with driving on a suspended license.

9

Defendant Gentry could not have seen otherwise before making the stop. And accepting those facts as true, Defendant Gentry lacked reasonable suspicion to conduct the traffic stop. Plaintiff, therefore, has stated a plausible Fourth Amendment unlawful seizure claim against Defendant Gentry.

Defendant Gentry has argued that dismissal is nonetheless warranted because "Plaintiff makes no claim for damages from Officer Gentry related to any alleged illegal traffic stop." (Doc. 66 at 8). Instead, Defendant Gentry says Plaintiff has only sought the reversal of his state court conviction for driving on a suspended license. (*Id.*). Defendant Gentry is correct that Plaintiff cannot obtain the reversal of his state court conviction via this § 1983 action. *See Dyer v. Lee*, 488 F.3d 876, 880 (11th Cir. 2007) (explaining that a § 1983 action may not be used to invalidate a state court conviction). But when liberally construed, Plaintiff's complaint has sought more than that from Defendant Gentry.

Plaintiff's complaint ends with the following statement: "[T]he Plaintiff requests this Court require Defendants to pay the costs of injuries [and] expenses as well any other reliefs [sic] the Court deems appropriate." (Doc. 37 at 16). This statement is sufficient to state a claim

for, at the very least, nominal damages.  In the Eleventh Circuit, "when a *pro se* plaintiff has not requested nominal damages specifically in his complaint, in light of the liberal construction afforded *pro se* pleadings, a district court should consider whether such damages are recoverable before dismissing a complaint." *Magwood v. Sec'y, Fla. Dep't of Corr.*, 652 F. App'x 841, 845 (11th Cir. 2016) (reversing dismissal because the district court failed to consider the availability of nominal damages).  And nominal damages are recoverable for Fourth Amendment violations, "even if [a plaintiff] cannot prove actual injury sufficient to entitle him to compensatory damages." *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003).  Accordingly, Defendant Gentry's motion to dismiss Plaintiff's unlawful seizure claim should be denied.[8]

---

[8] To the extent Defendant Gentry argues (Doc. 66 at 8) that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Plaintiff's unlawful seizure claim, the argument lacks merit.  The *Heck* doctrine only applies if a judgment for the plaintiff would imply the invalidity of the plaintiff's prior conviction. *Hughes*, 350 F.3d at 1160.  Because an unlawful seizure claim usually does not imply the invalidity of a state court conviction, "*Heck* does not generally bar such claims." *Id*.  Here, the basis for Plaintiff's unlawful seizure claim is the allegation that Defendant Gentry lacked reasonable suspicion to stop him for having an unrestrained child in the car.  Plaintiff was convicted of driving with a suspended license.  A finding that there was no reasonable suspicion for Defendant Gentry to stop Plaintiff for having an unrestrained child would not invalidate his subsequent conviction for the separate offense of driving on a suspended

**D.    Plaintiff has not stated a plausible Fourth Amendment unlawful arrest claim against Defendant Gentry.**

To the extent Plaintiff has alleged that Defendant Gentry violated the Fourth Amendment by unlawfully arresting him (Doc. 37 at 2), such a claim should be dismissed for failure to state a claim.  An arrest is a Fourth Amendment seizure that must be supported by probable cause. *Brescher v. Von Stein*, 904 F.2d 572, 578 (11th Cir. 1990).  An individual arrested without probable cause may pursue a claim under § 1983.  *Id*. Probable cause "exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."  *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).

In this case, Plaintiff has alleged that Defendant Gentry ran Plaintiff's identifying information through a police database during the traffic stop.  (Doc. 37 at 11, 15).  That inquiry revealed Plaintiff had a

---

license.  *See Searcy v. Roberts*, 74 F. App'x 679, 681 n.1 (8th Cir. 2003) (explaining that the plaintiff's Fourth Amendment illegal seizure claims were "not barred by *Heck v. Humphrey*" because "success on such claims would not necessarily imply the invalidity of [the plaintiff's] convictions for the other offenses").  Thus, the *Heck* doctrine does not bar Plaintiff's Fourth Amendment unlawful seizure claim.

suspended license.  (*Id.*).  Defendant Gentry then arrested Plaintiff for
that offense under section 322.34 of the Florida Statutes.  (Doc. 37 at 21).
Based on the allegations in the second amended complaint, the arrest
was supported by probable cause.  *See, e.g., State v. Miller*, 565 So. 2d
886, 887 (Fla. 2d DCA 1990) (finding the officer who stopped the
defendant for a traffic violation had probable cause to arrest after
learning from police dispatcher that the defendant had a suspended
license).   Because—even accepting Plaintiff's allegations as true—
Defendant Gentry had probable cause to believe Plaintiff lacked a valid
driver's license, Plaintiff cannot prevail on his Fourth Amendment
unlawful arrest claim.  *See Ortega v. Christian*, 85 F.3d 1521, 1525 (11th
Cir. 1996) (explaining that an "arrest made with probable cause" bars a
plaintiff's Fourth Amendment unlawful arrest claim).  Thus, Defendant
Gentry's motion to dismiss Plaintiff's claim that he was unlawfully
arrested should be granted.

**E.    Plaintiff has stated a plausible Fourth Amendment unlawful search claim against Defendants Gentry, Hubley, and Kelly.**

Plaintiff further alleges that his Fourth Amendment rights were violated when Defendants Gentry, Hubley, and Kelly[9] unlawfully searched his car.  (Doc. 37 at 4, 8-9).  According to Plaintiff, Defendant Gentry requested that Plaintiff consent to the search.  (*Id*. at 8).  After Plaintiff refused, a police K-9 arrived on the scene.  (*Id*.).  Plaintiff says Defendants Gentry, Hubley, and Kelly then searched his car without probable cause.  (*Id*. at 9).

The Fourth Amendment protects against unreasonable searches of a person's "effects," which includes automobiles.  *United States v. Jones*, 565 U.S. 400, 404 (2012).  Warrantless searches are *per se* unreasonable as a general rule.  *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015).  But that general rule is subject to numerous exceptions, one of which is the automobile exception.[10]  *Collins v. Virginia*, 584 U.S. 586, 591 (2018).

---

[9] Plaintiff initially lacked the names of Defendants Hubley and Kelly. Thus, he referred to them as Unit PPD #153 and Unknown Sergeant. (Doc. 37 at 6).  Plaintiff also included with his complaint screenshot photographs from dashcam video of these two officers.  (*Id*. at 19-20). Plaintiff has since informed the Court that the two officers are Defendants Hubley and Kelly.  (*See* Doc. 54).

[10] There are two other exceptions that may authorize a warrantless search of an automobile—the search incident to lawful arrest exception

Under that exception, officers may search an automobile without a warrant if they have probable cause to believe it contains contraband. *Id.* at 592.

One way to establish probable cause is for a drug detection dog to alert to the car. *United States v. Braddy*, 11 F.4th 1298, 1312 (11th Cir. 2021). To support a finding of probable cause, there must be sufficient indicia of the drug detection dog's reliability. *Id.* This is "because only accurate drug-detection dogs enable officers to locate contraband without incurring unnecessary risks or wasting limited time and resources." *Florida v. Harris*, 568 U.S. 237, 247 (2013). But there need not be "comprehensive documentation of the dog's prior 'hits' and 'misses' in the field." *Id.* at 245. Instead, "evidence of a dog's satisfactory performance

---

and the inventory exception. Neither of those would apply here. First, the search incident to lawful arrest exception would not apply because Plaintiff was neither unsecured within the grabbing area of the car at the time of the search, nor was it reasonably likely evidence of the crime of arrest (i.e., driving on a suspended license) would be found in the car. *See Arizona v. Gant*, 556 U.S. 332, 343-44 (2009) (describing the requirements for the search of a car incident to lawful arrest). Second, the automobile was not impounded and then searched for a non-investigatory purpose under the police department's established impoundment procedures. *See United States v. Khoury*, 901 F.2d 948, 959 (11th Cir. 1990) (discussing parameters of the automobile inventory exception).

in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 246; *see also United States v. Rodriguez*, 762 F. App'x 938, 942 (11th Cir. 2019) (explaining that for a drug detection dog's alert to establish probable cause, a court must "determine the [dog's] reliability").

In today's case, Plaintiff alleges that Defendants Gentry, Hubley, and Kelly searched his car without probable cause.  Although Plaintiff alleges that a drug detection dog was called to the scene, the complaint does not allege that the drug detection dog alerted to the car. Additionally, the police report that Plaintiff attached to his complaint says nothing about the drug detection dog alerting to the car.  (*See* Doc. 37 at 21-22).  Nor are there other facts in the record from which the Court could reasonably infer that the dog positively alerted.

There is also nothing currently before the Court (i.e., training records or certifications) that relates to the drug detection dog's reliability.  And the Court must make a reliability determination before finding probable cause based on a drug detection dog's alert.  *See United States v. Trejo*, 551 F. App'x 565, 568-69 (11th Cir. 2014) (explaining that

"[b]efore finding probable cause" a court should determine that "the dog's alert [is] reliable").

Defendants Gentry, Hubley, and Kelly may very well have in their possession evidence showing that (1) the drug detection dog alerted to Plaintiff's car; and (2) the drug detection dog is reliable. The production of such evidence may ultimately result in summary judgment in their favor on this claim. But the Court cannot consider the possible existence of such evidence when deciding the current motions to dismiss. Instead, the Court is required to accept Plaintiff's allegations as true and to draw all reasonable inferences in his favor. When that standard is applied here, Plaintiff has plausibly alleged that Defendants searched his car without probable cause in violation of the Fourth Amendment. Thus, the motions to dismiss that claim should be denied. *See Santiago v. Mark S.*, No. 3:21-cv-886, 2022 WL 4079586, at *7 (M.D. Fla. Sept. 6, 2022) (denying motion to dismiss unlawful search claim because accepting allegations as true and drawing reasonable inferences in favor of the plaintiff, the search was not supported by an alert from a reliable drug detection dog); *see also Cole v. Coverstone*, No. 2:20-cv-829, 2020 WL 2571489, at *5 (S.D. Ohio May 21, 2020) (denying motion to dismiss

Fourth Amendment claim because "it could be reasonably inferred that the drug-detection dog did not positively alert to drugs in the vehicle," and "[i]f that is true, the police dog did not supply probable cause to search the vehicle").

### F.    Plaintiff's claims against Defendants Hubley and Kelly are not subject to dismissal for impermissible fictitious party pleading.

Defendants Hubley and Kelly have also moved to dismiss under Rules 12(b)(4) and (5) for insufficient service on the basis that Plaintiff failed to identify them by name in his second amended complaint. This, Defendants Hubley and Kelly say, violated the prohibition against fictitious party pleading. The Court disagrees.

Fictitious party pleading is generally forbidden in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). But "[i]t is important to distinguish suing fictitious parties from real parties sued under a fictitious name. There may be times when, for one reason or another, the plaintiff is unwilling or unable to use a party's real name." *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (cleaned up). For example, *pro se* civil rights litigants may not know (or have the ability to learn), at the time of filing a complaint, the identity of all officers involved

in an incident.  In such circumstances, a *pro se* litigant may maintain a claim "against unnamed defendants where allegations in the complaint make clear the plaintiff could uncover the names through discovery." *Bowens v. Sup't of Miami S. Beach Police Dep't.*, 557 F. App'x 857, 862 (11th Cir. 2014) (finding district court erred by concluding that "Arresting Officers" were not properly named defendants in a *pro se* civil rights case); *see also Morris v. Warden*, 638 F. App'x 880, 881 (11th Cir. 2016) ("[W]e have allowed the initial use of an unnamed defendant where discovery would likely uncover that defendant's identity."). The information provided in the complaint should be "sufficiently clear to allow service of process" on the unnamed defendant.  *Dean*, 951 F.2d at 1216.

Here, Plaintiff's complaint listed as Defendants two unnamed officers ("Unit PPD #153" and "Sergeant badge and numbers are unknown") who were involved in the search of his car.  When he filed the complaint, Plaintiff did not know the names of the two officers.  Although Plaintiff had a copy of the arrest report prepared by Defendant Gentry, that report did not identify the two other officers.  (*See* Doc. 37 at 21). Along with his complaint, however, Plaintiff did provide photographs of

the two unnamed officers.[11]  (*Id*. at 19, 20).   Additionally, Plaintiff subsequently identified the two unnamed officers and informed the Court that they were Defendants Hubley and Kelly.  (Doc. 54).

Contrary to the argument advanced by Defendants Hubley and Kelly, Plaintiff did not impermissibly engage in fictitious party pleading. Rather, this is a case of a *pro se* civil rights litigant who lacked names for all the officers involved in the incident but "the allegations in the complaint make clear that the plaintiff could uncover the names through discovery."  *Bowens*, 557 F. App'x at 862.   Indeed, Plaintiff actually provided photographs of the unnamed Defendants, as well as their ranks, a badge number for one, along with the date, time, and location of the incident.  The Court believes this was more than sufficient identification under the circumstances to allow service to be completed and for Plaintiff to obtain the names of the unnamed parties (which he later did).  *See id.* (finding "Arresting Officers of Miami South Beach Police Department" sufficiently identified the unnamed defendants).  Thus, there is no merit

---

[11] The photographs appear to be screenshots from a police dash camera video.

to Plaintiff's argument that Defendants Hubley and Kelly should be dismissed for a violation of the fictitious-party pleading prohibition.

There is similarly no merit to the argument that Defendants Hubley and Kelly were insufficiently served because the summonses were defective.  It is undisputed that Defendants Hubley and Kelly were personally served with summonses in this case.  (*See* Doc. 64-1, 64-2).  They claim, however, that the summonses were defective.  The crux of their argument is that the Clerk of Court included the information (i.e., "Pensacola Police Department Officer Unit 153") that was listed in Plaintiff's complaint on the summonses, but Plaintiff subsequently handwrote the names "Patrick Kelly, Sergeant" and "Eric Hubley, Lieutenant" on the summonses before they were served.  According to Defendants Kelly and Hubley, by handwriting their names on the summonses, Plaintiff rendered their subsequent service void.  The Court is not persuaded.

The summonses were personally served on Defendants Hubley and Kelly by a certified process server.  (Docs. 64-1, 64-2).  There is no debate as to whether Defendants Hubley and Kelly have received notice of Plaintiff's lawsuit against them, and that is the primary goal of Rule 4.

*See generally* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (4th ed. 2015) (explaining that Rule 4 reflects the "modern conception of service of process as primarily a notice-giving device"). As the Eleventh Circuit has explained, Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990). Technical errors in the form of a summons generally do not warrant dismissal, unless the defendant can show that the errors caused actual prejudice. *See Thompson v. Kramer*, No. 93-2290, 1994 WL 725953, at *5 (E.D. Pa. Dec. 29, 1994) (refusing to dismiss when the summons contained handwritten information that had been added by the plaintiff and was actually the summons issued for the original complaint instead of the amended complaint); *see also McGee v. Cook*, No. 8:09–cv–2543, 2011 WL 1365024, at *1 (M.D. Fla. Apr. 11, 2011) (refusing to dismiss when the summons lacked the proper name and address for the plaintiff's attorney under Rule 4(a)(1)(C)); *see also King v. Marcy*, No. 2:17-cv-112, 2019 WL 691782, at *4 (S.D. Ga. Feb. 19, 2019) (finding that the omission and misspelling of several defendants' names on a summons was a technical error that did not warrant

dismissal). Here, the summonses served by Plaintiff may have been technically defective. But the summonses provided sufficient notice to Defendants Hubley and Kelly, and they have failed to show any actual prejudice caused by Plaintiff's handwriting their names on the summonses.[12] Accordingly, there is no basis for dismissing Defendants Hubley and Kelly for insufficient service of process.

### III. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1.  The motion to dismiss (Doc. 65) filed by Defendants Hubley and Kelly be **DENIED**.

2.  The motion to dismiss (Doc. 66) filed by Defendant Gentry be **GRANTED in part** as to Plaintiff's malicious prosecution and unlawful arrest claims and be **DENIED in part** as to Plaintiff's unlawful search and seizure claims.

---

[12] The Court would note that "the avoidance of dismissals for improper service, especially when the defect is technical in nature, has the desirable objective of promoting the forward movement of the litigation and the disposition of cases on their merits, which are the goals prescribed in Rule 1 [of the Federal Rules of Civil Procedure]." 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (4th ed. 2015)

3.    This matter be returned to the undersigned for further

proceedings.

At Pensacola, Florida this 5th day of June 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections to the proposed findings and recommendations set forth above must be filed within fourteen days of the date of this Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

24